IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARIFAH SCOTT-RILEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 04 C 1368 |
| MULLINS FOOD PRODUCTS, INC., and WILLIAM MULLINS, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Sharifah Scott-Riley has sued her former employer, Mullins Food Products, Inc., for discrimination based on disability and failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12112(a); for discrimination based on race and gender, retaliation, and creation of a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and 42 U.S.C. § 1981; for retaliatory discharge in violation of Illinois public policy; and for intentional infliction of emotional distress under Illinois common law. Scott-Riley has also sued her former supervisor, Bill Mullins, for discrimination based on race and retaliation under 42 U.S.C. § 1981. Both defendants have moved for summary judgment. For the following reasons, the Court grants the motion in part and denies it in part.

### Facts

Scott-Riley is an African-American female who worked for Mullins Food on a full-time basis from December 13, 1999 until her termination on October 18, 2002. Mullins Food is a

1

family-owned business that prepares and sells specialty foods to the restaurant industry. Scott-Riley entered the company as a level two laboratory technician in the quality assurance department after graduating from Grambling State University. In that position, she tested fat, moisture, salt, acid, pH, and viscosity in foods prepared by the company. She also filled in for the microbiologist from time to time. Mullins Food eventually promoted Scott-Riley to a level three laboratory technician, though the parties do not indicate when that promotion occurred.

On December 29, 2000, Scott-Riley suffered third degree burns when she accidentally submerged her foot into a bucket of hot water while cleaning a sterilization machine. Because of the seriousness of the injury, she was out of work for more than three months. When she returned on April 4, 2001, her physician said she could return on a part-time, light-duty basis, and Mullins Food accommodated this limitation by allowing Scott-Riley to work only five hours a day, Monday through Thursday. On June 4, 2001, Scott-Riley returned to work on a full-time basis with the restrictions that she not climb stairs if uncomfortable and that her work be sedentary. Though employees ordinarily marked their arrival time by punching a time clock on the second floor, Mullins Food allowed Scott-Riley to record her time by completing hand written time sheets so that she did not have to climb stairs.

Scott-Riley gave birth to a child on March 11, 2002, was off work for eleven weeks, and returned on May 21, 2002. At that time, Scott-Riley claims that Tom Mullins, an officer with Mullins Food, told her to start going upstairs to punch the time clock. Scott-Riley complained that this would cause her discomfort, but Tom Mullins said her foot should be healed by this time. Scott-Riley then complained to the Director of Human Resources, Donna Hrebec, who told her that she should not have to climb the stairs if her doctor's notes were up to date. From May

21 to October 17, Scott-Riley climbed the stairs when her foot did not hurt–a total of approximately seven times.

In August 2002, Tom Mullins looked into Scott-Riley's arrival times by consulting the computerized access system which records when an employee swipes her key card. The report revealed that Scott-Riley was tardy eighteen times from June 27 - August 21, though she had noted otherwise on her hand written time sheets. Tom Mullins believed her conduct constituted a form of theft. Scott-Riley, maintains that Charles Wind, her supervisor in the Quality Assurance Lab, knew that she completed her time sheets in the manner she did, because he gave her the time sheets for payroll purposes a week after they should have been completed. She concedes that she may have been late between June 27 and August 21, 2002, but insists that Wind excused her tardiness on these occassions. Scott-Riley claims that Wind knew that her baby suffered from sleep apnea and allowed her, when the baby was ill, to arrive late and make up the time at the end of her shift. Indeed, Wind personally kept attendance records for each of his employees, and his notes do not reflect any unexcused tardies for Scott-Riley during the relevant period of time.

On August 21, 2002, Mike Mullins, Mullins Food's in-house counsel, met with Scott-Riley to discuss the discrepancies between her time sheets and the times the system indicated she had swiped her keycard. Mike Mullins told her that the number of tardies was unacceptable and that her timeliness needed to improve. Later that day, Scott-Riley spoke with Wind, and he also expressed disapproval of her tardiness. She told Wind that the baby was making her late, so he changed her start time from 6:00 a.m. to 6:30 a.m. to accommodate her. In a August 26 meeting, Tom Mullins changed Scott-Riley's start time again, and told her to swipe the door by 6:25 to

3

arrive at her work station by 6:30.

On August 21 or August 26 (the parties disagree on the exact date), Mullins Food instituted its formal disciplinary policy against Scott-Riley. That policy required a verbal warning after three tardies, a written warning after four tardies, a suspension after five tardies, and discharge after six tardies. On August 26, Scott-Riley received a written warning for arriving to work at 6:09 a.m. on August 22. Scott-Riley insists she was not late on August 22 because her start time had already been changed to 6:30. On September 19, Scott-Riley received a three day suspension because she arrived to work at 6:28 on September 12 and 6:29 on September 19. On September 23, Scott-Riley filed a charge of discrimination with the EEOC, claiming that similarly situated male, non-black, and non-disabled employees were not suspended for being tardy. On October 11, the EEOC issued a letter notifying Mullins Foods of the charge. Bill Mullins denies receiving the letter before October 21. On October 17, Scott-Riley swiped the door at 6:28, and Bill Mullins terminated her employment.

On March 27, 2003, Scott-Riley filed an amended EEOC charge alleging that she had experienced a hostile work environment. She maintains that on several occasions, her supervisor Charles Wind made derogatory comments about the predominantly black university she attended, printed jokes and pictures of naked women, placed the pictures on her desk, and made comments about the women's breasts.

## Discussion

On a motion for summary judgment, the law requires the Court to consider the evidence and draw all reasonable inferences in favor of Scott-Riley, the non-moving party. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must look at the evidence

"as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

1.  **Americans With Disabilities Act**

The ADA provides disabled persons with two principal workplace rights. The first prohibits employment discrimination against a qualified individual with a disability. 42 U.S.C. § 12112(a). The second requires employers to provide reasonable accommodations to individuals with a disability who are otherwise qualified to perform their job. 42 U.S.C. § 12112(b). To establish a violation of either right, a plaintiff must prove that she is disabled within the meaning of the ADA. *Id.*

The term "individual with a disability" includes persons who are actually disabled, those who are regarded as disabled, and those who have a record of being disabled. 42 U.S.C. § 12102(2). The disability, whether actual or perceived, must substantially limit the plaintiff in a major life activity. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). Scott-Riley claims that she qualifies as a disabled person under the ADA because she had an actual disability that substantially limited a major life activity, or alternatively, because Mullins Food perceived her to have such a disability. The Court assesses Scott-Riley's condition at the time of the adverse employment action–October 2002–*see, e.g., Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996), and at the time of the failure to accommodate–March 2002. *Hoeller v. Eaton Corp.*, 149 F.3d 621, 624 (7th Cir. 1998).

Scott-Riley claims she was disabled because she had difficulty climbing stairs, walking, driving, and caring for herself. In her deposition, however, she admitted that in 2001 she stopped

5

having trouble taking care of herself and began driving on her own. By her own admission, then, she was not disabled in the major life activities of driving and caring for herself in 2002. Scott-Riley also claims that she was disabled in the major life activity of walking and cites an August 2002 doctor's note that states, "[Scott-Riley] cannot climb stairs regularly only when she feels comfortable doing so due to history of ankle burn." She also testified that she had difficulty walking "long lengths." This evidence is insufficient to permit a reasonable jury to find that Scott-Riley had a disability based on a limited ability to walk. *See Puoci v. City of Chicago*, 81 F. Supp. 2d 893, 896-97 (N.D. Ill. 2000) (plaintiff who walked with a limp, had pain and discomfort when walking on soft surfaces, experienced numbness and fatigue in his right leg and thigh when walking, had difficulty climbing stairs, but did not use a cane or a crutch and had no medical restrictions on walking, did not have a disability under the ADA); *Banks v. Hit or Miss, Inc.*, 996 F. Supp. 802, 806-07 (N.D. Ill. 1998) (plaintiff who had corrective surgery on both feet, could only walk short distances, had chronic foot pain, and was limited by her doctor to working no more than eight hours at a time, taking fifteen minute breaks every few hours, not working on a ladder, and wearing lace-up shoes, was not disabled). Consequently, no reasonable jury could find that Scott-Riley was actually disabled at the time of her termination or at the time of the failure to accommodate.

Scott-Riley also claims that even if she was not actually disabled, Mullins Food regarded her as disabled because it knew she could not walk up and down stairs. As discussed above, the inability to regularly climb stairs does not limit a major life activity. No jury reasonably could find that Mullins Food regarded Scott-Riley as disabled within the meaning of the ADA.

2. **Discrimination based on race and gender**

### a. Termination because of race and gender

Scott-Riley claims that Mullins Food fired her because of her race and gender in violation of Title VII and 42 U.S.C. § 1981 and proceeds under the indirect *McDonnell Douglas v. Green* burden-shifting method. 411 U.S. 792, 802 n. 13 (1973). To survive Mullins Food's motion for summary judgment, Scott-Riley must establish a *prima facie* case by putting forth evidence from which a reasonable jury could find that she is a member of a protected class, she was satisfying Mullins Food's legitimate job expectations, she was discharged, and other similarly situated non-class members were treated more favorably. *Id.* If Scott-Riley establishes a *prima facie* case, then the burden shifts to Mullins Food to put forth a legitimate, non-discriminatory reason for the termination. *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001). If Mullins Food satisfies its burden, then the inference of discrimination disappears, and Scott-Riley must put forth evidence from which a reasonable jury could find that Mullins Food's reason was a pretext for discrimination. *Id.* at 1005-06.

The parties only disagree on the second and fourth elements of the *prima facie* case: whether Scott-Riley satisfied Mullins Food's legitimate job expectations and whether other similarly situated non-class members were treated more favorably. Mullins Food argues that Scott-Riley was not satisfying its legitimate job expectations at the time of her termination because she falsified time records and was tardy twenty-two times between June 27 and October 17. Scott-Riley testified in her deposition, however, that she completed the time records as her supervisors, Wind and Gause, instructed. She said that when Wind and Gause were doing payroll, they gave her the time sheets to record her time for the prior week. She said she wrote down her start and end times, and her supervisors were satisfied. Scott-Riley also claims that any

tardiness from June 27 through August 21 was excused. She points to Wind's deposition, in which he testified that his attendance book would reflect the days that Scott-Riley was tardy or absent. Wind Dep. at 131-32. Scott-Riley has produced a photocopy of the book, which does not indicate any unexcused tardies from June 27 to August 22. Given this evidence, a jury reasonably could find that Scott-Riley was satisfying her employer's legitimate job expectations during the time immediately preceding her termination.

Scott-Riley also argues that other similarly situated employees were treated more favorably. To satisfy this element, Scott-Riley must establish that she received dissimilar–and harsher–punishment than that received by similarly situated non-black and male employees for similar conduct. *See Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). In considering whether employees were similarly situated "a court must look at all relevant factors, the number of which depends on the context of the case." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). Those factors may include whether the employees "dealt with the same supervisor" and were "subject to the same standards." *Id.* at 617-18.

Scott-Riley points to Booker Clay, a black male who was tardy nine times in 2002 but was not suspended or terminated, and Salvador Correa, a hispanic male who was allowed at least thirteen tardies before being fired in 2003. Mullins Food argues that Clay and Correa were not similarly situated because they did not falsify time records. The issue of whether Scott-Riley falsified time records is genuinely in dispute, however, and in any event, Mullins Food concedes that falsification of time sheets was not the reason it terminated Scott-Riley. Defs.' Reply at 6. Thus, a jury reasonably could find that Mullins Food treated similarly situated non-black and male employees more favorably in the manner it disciplined them for tardies.

Because Scott-Riley has provided evidence from which a jury reasonably could find that she has established a *prima facie* case of race and gender discrimination, the burden shifts to Mullins Food to put forth a legitimate, non-discriminatory reason for Scott-Riley's firing. It claims it fired her for tardiness, so Scott-Riley must present evidence that this reason is a pretext for sex discrimination. *See Grayson v. O'Neill*, 308 F.3d 808, 820 (7th Cir. 2002). Mullins Food's reason is pretextual if it had no basis in fact, did not actually motivate Mullins Food's decision, or was insufficient to motivate its decision. *Id.* The same reason that supports Scott-Riley's *prima facie* case–that similarly situated non-black and male employees were treated more favorably–also supports a finding of pretext. *See Curry v. Menard*, 270 F.3d 473, 479 (7th Cir. 2001) (citing cases). Mullins Food says it fired Scott-Riley because she violated the company's attendance policy. But, as discussed above, Scott-Riley has put forth evidence indicating that non-black and male employees violated the same attendance policy and were not disciplined. A jury reasonably could find, given this inconsistency, that Scott-Riley's tardiness was a pretext for gender discrimination. *Id.*

**b.    Retaliation**

Scott-Riley may proceed under an adapted burden-shifting method to prove a claim of retaliation. *See Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 903-04 (7th Cir. 2005). The elements are identical to the *McDonnell Douglas* test recited above, except that Scott-Riley must point to a similarly situated employee who did not file a charge of discrimination. *See Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776 (7th Cir. 2004). Clay and Correa, the similarly situated individuals cited in Scott-Riley's gender discrimination claim, are also similarly situated under the retaliation test. Because Scott-Riley created a genuine issue of

9

material fact with respect to the other elements of the test, a jury reasonably could find that Mullins Food retaliated against Scott-Riley for filing a discrimination charge.

   c.   **Failure to train**

Scott-Riley claims that Mullins Food failed to provide crucial on-the-job training that would have been considered favorably in promotional opportunities, though it trained other whites and non-blacks in those same areas. Specifically, she claims that other lab technicians outside her protected class were trained on how to complete ingredient statements and hazard analysis critical control point plans ("HACCP" plans), though she was not. Because Scott-Riley did not present direct evidence of Mullins Food's discriminatory failure to train, the Court again uses the *McDonnell Douglas* burden-shifting formula. *McDonnell Douglas*, 411 U.S. at 802-05; *Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000). To establish a failure to train claim, Scott-Riley must demonstrate that she is a member of a protected group, that Mullins Food provided training to its employees, that she was eligible for training, and that she was not provided training under circumstances giving rise to an inference of discrimination, i.e., that she was denied training given to other similarly situated employees who were not members of the protected group. *Malacara*, 224 F.3d at 729.

Mullins Food does not address these elements in its briefs. It does not contest that Scott-Riley was a member of a protected group, that Mullins provided the training, that Scott-Riley was eligible for the training, or that other similarly situated non-black and male employees outside her protected group received the training. Consequently, the burden shifts to Mullins Food to articulate a non-discriminatory reason for the failure to train. It argues in its reply brief that it failed to train Scott-Riley because she did not ask for the training. In her deposition,

10

however, Scott-Riley unequivocally testified that she expressed interest in learning how to do HACCP plans and ingredient statements after Dia Rizmanovski, the person who previously performed those tasks, left the company. As a result, a jury reasonably could find that Mullins Food's reason for not training Scott-Riley was a pretext for race and sex discrimination.

### d. Failure to promote

Scott-Riley claims that Mullins Food denied her promotional opportunities, but neither her brief nor her LR 56.1 Statement identify a specific position she applied for and was denied. This is fatal to her failure to promote claim. *See Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003) (establishing elements of *prima facie* case).

### e. Disparate pay rate

Scott-Riley claims that Mullins Food paid other similarly situated white and male employees a higher hourly wage, and offers Booker Clay, a black male, as a comparative. She claims that when she returned to work in April 2001, she discovered that Mullins Food paid Clay more money though he performed similar work. Even if her allegations are true, however, the claim is time-barred, because Scott-Riley's EEOC charge was filed more than 300 days after she discovered the pay differential. *See Perra v. Flexonics, Inc.*, 727 F. Supp. 406, 412 (N.D. Ill. 1989). Scott-Riley makes no argument for tolling the limitations period.

### f. Racial Harassment

Scott-Riley claims that she was subjected to a hostile work environment because of her race. She says that in department meetings, Wind suggested that she was unable to answer his questions because she attended Grambling State, a predominantly black university. She claims that Wind made these comments all the time, but clarified in her deposition that she only recalled

11

him making the comments twice. Scott-Riley Dep. at 32-33. To succeed on her racial harassment claim, Scott-Riley must show that she was subject to unwelcome racial harassment that unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive working environment and seriously affected her psychological well-being. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004). The plaintiff must show that the workplace was both subjectively and objectively hostile. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21-22 (1993). This means that the plaintiff must have perceived the workplace as racially hostile or abusive, and that a reasonable person would have regarded it as such. *Id.*

No reasonable jury could find that the incidents of which Scott-Riley complains satisfied the objective part of the test. Though rude and unprofessional, Wind's conduct consisted of a few isolated comments that were not physically threatening. *See Luckie v. Ameritech Corp.* 389 F.3d 708, 714 (7th Cir. 2004); *Aguilera v. Vill. of Hazel Crest*, 234 F. Supp. 2d 840, 847-48 (N.D. Ill. 2002) (comments making fun of plaintiff's poor English skills, telling him he was not American enough, and that he should work in a district with more minorities, not severe enough to be actionable). As a result, Scott-Riley cannot establish an actionable claim for a hostile work environment based on race.

### g.  Sexual harassment

Scott-Riley claims that she suffered a hostile work environment based on her gender in violation of Title VII and 42 U.S.C. § 1981. Mullins Foods argues that sexual harassment is not actionable under § 1981, that Scott-Riley's claims are time-barred, and that the alleged harassment was not sufficiently severe to be actionable. The first argument is easily resolved. Gender-based discrimination is not actionable under § 1981. *Runyon v. McCrary*, 427 U.S. 160,

167 (1976); *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1317 (7th Cir. 1984).

The Court next considers whether Scott-Riley is time-barred from relying on certain evidence occurring outside the relevant period of limitations. Scott-Riley claims that she should benefit from the well-recognized continuing violation doctrine. *See Nat'l R.R. Corp. v. Morgan*, 536 U.S. 101, 117 (2002). The doctrine recognizes that "a hostile work environment is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'" and allows a plaintiff to rely on acts occurring outside of the statute of limitations period to establish a hostile environment claim. *Id.* (quoting 42 U.S.C. § 2000e-5(e)(1)).

Mullins Food argues that the continuing violation doctrine is not applicable where a plaintiff suffers a pattern of repeated harassment over many years and it becomes evident before the limitations period that she is the victim of actionable sexual harassment. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999). Though it is true that the Seventh Circuit once recognized this limitation to the continuing violation doctrine, it is not good law after *Morgan*. *Morgan*, 536 U.S. at 117 ("[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.") Now, an employer who believes an employee waited too long to bring a hostile work environment claim must rely on traditional equitable defenses such as laches. *See id.* at 121. Mullins Food has not asserted such a defense in its motion.

In this case, Wind allegedly printed out pictures of naked women and made comments about their breasts every other day until Scott-Riley was fired. Because a jury reasonably could find that some illegal acts contributing to Scott-Riley's gender-based hostile environment claim

13

occurred within the filing period, the continuing violation doctrine allows her to rely on the entire period of sexual harassment to establish her claim.

The parties address only one other issue with respect to Scott-Riley's gender-based hostile environment claim: whether Wind's alleged harassment was sufficiently severe. In determining whether a work environment is hostile, the Court considers a number of factors, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation omitted). The harassment Scott-Riley allegedly endured, even for the four-and-a-half months she worked within the statute of limitations period, was sufficiently hostile to be actionable. Though pornographic pictures not directed at a plaintiff (i.e., so called "second-hand harassment") may not constitute a hostile environment, *see True v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1145 (7th Cir. 1997); *Flynn v. Mid-States Screw Corp.*, No. 99 C 50258, 2001 WL 789411, *4 (N.D. Ill. July 11, 2001), pictures of naked women repeatedly placed on a plaintiff's desk are different. *See Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (stating that actionable sexual harassment includes exposure to pornographic pictures).

### 3. State law retaliation

Scott-Riley claims that Mullins Food, in violation of Illinois public policy, fired her because she filed a worker's compensation claim in April 2001. *See Hartlein v. Ill. Power Co.*, 151 Ill. 2d 142, 160, 601 N.E.2d 720, 728 (1992). To survive summary judgment on this claim, Scott-Riley must put forth evidence from which a jury reasonably could find the worker's compensation claim caused her termination. *See Vorpagel v. Maxwell Corp. of America*, 333 Ill.

14

App. 3d 51, 57, 775 N.E.2d 658, 664 (2002). In Illinois, a plaintiff can prove causation even when the protected activity and adverse action are temporally remote. *Id.*.

Because Scott-Riley has produced evidence that Mullins Food's reason for terminating her was pretextual, i.e., that other similarly situated employees were tardy but not terminated, a jury reasonably could find that her termination was caused by the worker's compensation claim. Though the time between the protected activity and her termination is lengthy, Illinois courts do not regard this as controlling. The issue is best resolved by a jury.

### 4. Intentional infliction of emotional distress

Mullins Food moved for summary judgment on Scott-Riley's claim for intentional infliction of emotional distress, but Scott-Riley failed to address the claim in her response brief. The claim is deemed to have been abandoned. *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgement motions are waived).

### 5. Claims against Bill Mullins

Scott-Riley sued Bill Mullins in his individual capacity under 42 U.S.C. § 1981 for race discrimination and retaliation. Mullins is alleged to have participated in the decision to terminate Scott-Riley, which (as discussed earlier) a jury reasonably could find was retaliatory and because of Scott-Riley's race. Mullins' motion for summary judgment is denied with respect these claims. A jury could also reasonably find that Scott-Riley did not receive training because of her race. However, she did not allege that Bill Mullins participated in that decision. Therefore, Mullins' motion for summary judgment is granted with respect to this claim.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment in part and denies it in part [docket no. 55]. Mullins Food is entitled to summary judgment on Scott-Riley's ADA, failure to promote, disparate pay, racial harassment, and intentional infliction of emotional distress claims. Mullins Food's motion is otherwise denied. Bill Mullins is entitled to summary judgment on Scott-Riley's failure to train claim. Bill Mullins' motion is otherwise denied. The case is set for status hearing on October 13, 2005 at 9:30 a.m. for the purpose of discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 3, 2005